**In the Matter of:**

*UNITED STATES OF AMERICA*

*vs.*

*JOSHUA RYNE GOLDBERG*

---

*COMPETENCY HEARING*

*December 14, 2015*

---

Cornerstone Litigation Services, LLC
301 West Bay Street, Suite 1420
Jacksonville, FL 32202
Phone: 904.647.4723
Facsimile: 904.866.4253
www.clsjax.com



Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 2 of 58 PageID 132

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

```
 1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
 2                JACKSONVILLE DIVISION

 3
               CASE NO.:  3:15-mj-1170-JRK
 4

 5
    UNITED STATES OF AMERICA
 6
         vs.
 7
    JOSHUA RYNE GOLDBERG
 8

 9

10

11              PROCEEDINGS BEFORE

12    THE HONORABLE MAGISTRATE JUDGE JAMES R. KLINDT

13

14         10:22 a.m. through 12:06 p.m.
              Monday, December 14, 2015
15

16
              311 West Monroe Street
17           Jacksonville, Florida 32202

18

19           Allison B. Murray, RPR

20

21

22

23

24

25
```

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 3 of 58 PageID 133

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                                    Page 2

 1  | APPEARANCES  OF  COUNSEL

 2  |

 3  |

 4  | On  behalf  of  the  United  States:

 5  |

 6  |     UNITED  STATES  ATTORNEY'S  OFFICE
    |     KEVIN  FREIN,  Esquire
 7  |     Suite  700
    |     300  North  Hogan  Street
 8  |     Jacksonville,  Florida  32202

 9  |

10  |

11  | On  behalf  of  the  Defendant:

12  |

13  |     SHORSTEIN  &  LASNETSKI,  LLC
    |     PAUL  A.  SHORSTEIN,  Esquire
14  |     Suite  303
    |     6550  St.  Augustine  Road
15  |     Jacksonville,  Florida  32217

16  |

17  |

18  |

19  |

20  |

21  |

22  |

23  |

24  |

25  |

```
 1                    INDEX OF EXAMINATION

 2

 3   WITNESS:

 4   DR. LISA BATH FELDMAN

 5                                           Page

 6   DIRECT-EXAMINATION

 7   By Mr. Frein                            4

 8

 9

10

11            E X H I B I T   I N D E X

12

13   GOVERNMENT      EVIDENCE

14    1              Curriculum vitae        11

15    2              Dr. Feldman's report    27

16

17

18

19

20

21

22

23

24

25
```

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 5 of 58 PageID 135

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                                              Page 4

```
 1              P R O C E E D I N G S

 2              December 14, 2015

 3              THE COURT:  This is the case of United

 4   States of America versus Joshua Ryne Goldberg,

 5   Case No. 3:15-mj-1170-JRK.

 6              Kevin Frein represents the United

 7   States.  Paul Shorstein represents Mr. Goldberg

 8   and Mr. Goldberg is present in the courtroom.

 9              Mr. Goldberg was charged in a criminal

10   complaint on September 10th, 2015 on the day

11   that he was arrested.

12              He has an initial appearance also on

13   that date of September 10th, 2015.  At his

14   initial appearance he asked for and qualified

15   for and the federal public defender and the

16   federal public defender was appointed to

17   represent him.

18              The government moved to detain

19   Mr. Goldberg and asked for a continuance of the

20   hearing and the hearing was continued until

21   September 15th, 2015.

22              In the meantime Mr. Shorstein filed a

23   notice of appearance and the public differed was

24   relieved of representing Mr. Goldberg.

25              At the detention hearing scheduled for
```

 1 | September 15th, 2015 Mr. Shorstein asked for a

 2 | continuance of detention hearing and, also, he

 3 | moved for a competency examination.  The court

 4 | granted that motion and entered an order on

 5 | September 16th, 2015 directing that Mr. Goldberg

 6 | be evaluated to determine whether he is

 7 | competent to proceed with trial and all other

 8 | matters in the case.

 9 |        He arrived at the Federal Detention

10 | Center in Miami on September 28th, 2015 and his

11 | evaluation commenced at that time.

12 |        He was evaluated from that point into

13 | September and a report issued dated November 13,

14 | 2015 in which the lead evaluator, Lisa B.

15 | Feldman opined that Mr. Goldberg was not

16 | competent to proceed.

17 |        So after receiving the report and once

18 | Mr. Goldberg was then transported back to

19 | Jacksonville we held a status hearing and that

20 | was on December 3rd, 2015 and at that hearing we

21 | set or discussed setting this hearing, that is

22 | the competency hearing, and then between the

23 | time of the status conference and today,

24 | specifically on December 7th, 2015, on behalf of

25 | Mr. Goldberg, Mr. Shorstein filed a notice of

1    intent to rely on insanity defense.

2          So that's where we are.  And we've

3    convened for the competency hearing and

4    previously Mr. Shorstein and Mr. Frein had

5    agreed that we could conduct this hearing via

6    video conferencing but I've been advised that

7    we're having difficulty with the video

8    conferencing, so we can do one of two things, we

9    can continue the hearing until another date and

10   we can try again to see if we can get the video

11   conferencing equipment working.

12         This is the first time, I want to say,

13   in more than eight years that we've had to

14   continue a video conference hearing because of

15   difficulties so it's fairly unusual that these

16   don't work smoothly.

17         The other thing that we could do is that

18   we could ask that Dr. Feldman or those who are

19   with her locate a notary in the federal

20   courthouse in Miami, the notary could administer

21   the oath to Dr. Feldman and identify Dr. Feldman

22   for the record and we could conduct this hearing

23   via telephone.  So those are our two options.

24         Mr. Shorstein, why don't I turn to you

25   first.  What do you think?

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 8 of 58 PageID 138

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                      Page 7

1        MR. SHORSTEIN:  Your Honor, I have no

2   objection to proceeding by phone.

3        THE COURT:  All right.  Mr. Frein?

4        MR. FREIN:  Your Honor, I would agree

5   given that everyone is here if we could proceed

6   by phone, the United States would be in

7   agreement with that.

8        THE COURT:  So what we'll do in just a

9   moment during the recess, it seems to me since

10  Dr. Feldman is your witness, Mr. Frein, you may

11  want to contact her via telephone, see what

12  arrangements you can help her make or what

13  arrangements she can make to find a notary.

14       The last time I did this one of your

15  colleagues found a notary whose commission had

16  expired about a year earlier, so if you can make

17  sure and verify that if a notary is found that

18  the notary's commission hasn't expired because

19  that would make any oath administered by the

20  notary worthless.

21       So if you could see what you can do in

22  that regard and once you know something you can

23  inform Ms. Chaddock and I'll be standing by and

24  if the marshal could stand by with Mr. Goldberg

25  we'll see how long this might take.

1          I would think in the Federal Courthouse

2     in Miami that a notary could be located fairly

3     quickly.  I'm thinking that the U.S. Attorney's

4     Office, I believe, it's located in the

5     courthouse in Miami, so it would seem to me that

6     someone in the U.S. Attorney's Office or someone

7     in the clerk's office would be able -- would be

8     a notary and be able to administer the oath.

9          So with that, let's recess and hope that

10    we can get started within about the next 15

11    minutes.

12          We're in recess.

13          (Short recess.)

14          Court Security Officer:  All rise.

15          THE COURT:  All right.  We're back in

16    the case of the United States versus Joshua Ryne

17    Goldberg.  Case No. 3:15-mj-1170-JRK.

18    Mr. Shorstein is here on behalf of Mr. Goldberg

19    and Mr. Goldberg is present in the courtroom.

20    Mr. Frein represents the United States.

21          We convened this hearing about 45

22    minutes ago but there was a problem with the

23    video feed and I understand now that that has

24    been corrected and we're ready to proceed by way

25    of video with the presentation and there will be

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 10 of 58 PageID 140

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                                    Page 9

 1        at least one witness.

 2              So, Mr. Frein, how did you wish to

 3        proceed this morning?

 4              MR. FREIN:  Your Honor, the United

 5        States is ready to move forward and call what

 6        would likely be our only witness, Your Honor.

 7        Procedurally I would advise the court there is

 8        likely an AUSA en route to that office and

 9        hopefully that won't disrupt anything but that

10        was the notary I found.

11              THE COURT:  All right.  Thank you.  So

12        who is your witness?

13              MR. FREIN:  Your Honor, the United

14        States would call Dr. Lisa Feldman.

15              THE COURT:  All right.  And,

16        Dr. Feldman, you're present in Miami?

17              THE WITNESS:  Yes, I am, Your Honor.

18              THE COURT:  Would you raise your right

19        hand, please.

20              Do you solemnly swear that the testimony

21        you are about to give will be the truth, the

22        whole truth and nothing but the truth so help

23        you God?

24        DR. LISA BATH FELDMAN, having been produced,

25     was first duly sworn and examined as follows:

1           THE WITNESS:  I do.

2           THE COURT:  Would you state your full

3      name, please?

4           THE WITNESS:  Lisa Bath Feldman.

5           THE COURT:  Would you spell your first

6      name, please?

7           THE WITNESS:  L-i-s-a.

8           THE COURT:  Your middle name, please?

9           THE WITNESS:  B-a-t-h.

10          THE COURT:  And your last name, please?

11          THE WITNESS:  F-e-l-d-m-a-n.

12          THE COURT:  All right.  Mr. Frein, you

13     may proceed.

14                   DIRECT-EXAMINATION

15     BY MR. FREIN:

16     Q.     Good morning, Dr. Feldman.

17     A.     Good morning.

18     Q.     Dr. Feldman, where are you currently

19     employed?

20     A.     Through the Federal Detention Center in

21     Miami, Florida.

22     Q.     What is your current position at the

23     Federal Detention Center in Miami, Florida?

24     A.     I am a forensic psychologist.

25     Q.     And when did you start working as a

```
 1    forensic psychologist for the Federal Bureau of

 2    Prisons?

 3          A.      November 2006.

 4               MR. FREIN:  Your Honor, at this time

 5          pursuant to my discussion with Mr. Shorstein I

 6          would tender into evidence as Government's

 7          Exhibit No. 1 the curriculum vitae of

 8          Dr. Feldman.

 9               THE COURT:  Mr. Shorstein?

10               MR. FREIN:  No objection, Your Honor.

11               THE COURT:  Thank you.  Government's

12          Exhibit 1 will be received.

13               (Government's Exhibit-1 was received

14    into evidence.)

15               MR. FREIN:  Also, at this time, Your

16          Honor, based on my conversations with

17          Mr. Shorstein I would tender to the court

18          Dr. Feldman as an expert in the field of

19          forensic psychologist.

20               THE COURT:  Mr. Shorstein?

21               MR. SHORSTEIN:  No, objection, Your

22          Honor.

23               THE COURT:  All right.  You may proceed.

24    BY MR. FREIN:

25          Q.    Dr. Feldman, are you familiar as part of
```

```
 1   your responsibilities at the Federal Detention

 2   Center in Miami with a defendant by the name of

 3   Joshua Ryne Goldberg?

 4        A.     Yes, I am.

 5        Q.     When did Mr. Goldberg first arrive at

 6   your facility?

 7        A.     If I may, I'm going to reference my

 8   report.

 9        Q.     Yes, Doctor.

10        A.     He arrived at our facility on

11   September 20, 2015.

12        Q.     When was Mr. Goldberg assigned to you

13   as part of the competency evaluation process?

14        A.     The following -- either that day or the

15   following day.

16        Q.     Once Mr. Goldberg is assigned to you for

17   the purposes of conducting a competency evaluation,

18   please explain to the court how you start that

19   competency evaluation process.

20        A.     Normally an initial contact is held with

21   the defendant to explain the nature or purpose of

22   the evaluation.

23        Q.     Did you do that with Mr. Goldberg?

24        A.     I did, yes.

25        Q.     And were you able to explain to
```

 1  Mr. Goldberg why he was at the facility and the

 2  limits on confidentiality as part of the competency

 3  evaluation process?

 4      A.    Yes.

 5      Q.    What was Mr. Goldberg's reaction to your

 6  explanation to him, Dr. Feldman?

 7      A.    In -- well, in Mr. Goldberg's case this

 8  initial contact was held in the suicide watch area

 9  of our facility because he had been placed on

10  suicide watch the night before.  So this is not

11  typically where an initial contact is held unless he

12  is on suicide watch.

13      Q.    When you make contact with him in that

14  area, does he generally seem to acknowledge or

15  understand what you have told him about why he is at

16  the facility and limits of confidentiality?

17      A.    I'm sorry, could you repeat that,

18  please?

19      Q.    Sure.  When you met with him, did

20  Mr. Goldberg acknowledge or seem to understand your

21  explanation of why he was at the facility and the

22  limits of confidentiality?

23      A.    He did understand.  I mean, he

24  acknowledged that, however, he insisted that he

25  should be at a federal or a medical center, a

1   hospital for the evaluation.

2        Q.     During the course of the evaluation

3   period did you conduct different types of tests and

4   interviews with Mr. Goldberg?

5        A.     Yes.

6        Q.     In addition to those tests and

7   interviews did you also review various documents and

8   other sources of information related to

9   Mr. Goldberg?

10       A.     Yes, I did.

11       Q.     Can you please briefly describe for the

12  court, Dr. Feldman, what were some of the documents

13  and other forms of information you reviewed as part

14  of the competency evaluation process?

15       A.     I reviewed various documents including

16  the criminal complaints and the affidavit that was

17  submitted that resulted in the charges, the offense

18  conduct, or the alleged offense conduct, various

19  medical records that were provided by Mr. Goldberg's

20  attorney as well as additional communications that

21  he had that were unrelated to the offense conduct.

22       Q.     Dr. Feldman, I would like to move into

23  the first area of discussion and that is the various

24  interviews you conducted with Mr. Goldberg.  Based

25  on those interviews and the review of his behaviors

 1   at the detention facility, what were some of the

 2   behavioral observations that you made during the

 3   competency evaluation process?

 4       A.     Mr. Goldberg had a very difficult time

 5   adjusting to our facility, that started from the

 6   moment that he arrived at our facility, which

 7   resulted in him being placed on suicide watch due to

 8   statements that he had made.

 9            His behavior or cleanliness was called

10   in on numerous occasions.  He presented as unkempt.

11   He refused to shower.  He had difficulties

12   maintaining his room clean, there were several

13   inmates in his -- in the unit that he was housed in

14   that would frequently have concerns about -- he was

15   not interacting as a typical inmate in a general

16   population unit.

17       Q.     Moving beyond some of the behavioral

18   observations that you described, based on your

19   contact with him, what were your observations

20   regarding his mental status during the competency

21   evaluation process?

22       A.     I'm sorry, may I just interrupt.

23   Someone has walked into the conference room.  Oh,

24   the notary public.

25       Q.     I believe based on the equipment now

 1   working, Dr. Feldman, that individual is free to go.

 2                   MR. FREIN:  Is that correct, Your Honor?

 3                   THE COURT:  Yes.

 4                   MR. FREIN:  Yes, that individual is free

 5       to go, Dr. Feldman.

 6   BY MR. FREIN:

 7       Q.      Dr. Feldman, I will repeat that question

 8   for you.

 9                   Moving from the behavioral observations

10   to Mr. Goldberg's mental status, based on your

11   contact with him during the evaluation for

12   competency, what were your observations regarding

13   his mental status?

14       A.      Throughout the contact with Mr. Goldberg

15   he behaved or he displayed very childlike behavior.

16   Some of his verbalizations bordered on

17   argumentativeness but in a more childlike behavior.

18   Verbalizing frustration when he was told that he

19   would not be able to be at a medical center, for

20   example.

21                   Even after being told this multiple

22   times he continued to perseverate or repeat himself

23   insisting that he should be at a medical center.

24                   In addition, his thought content

25   contained very paranoid, suspicious ideas, feeling

 1   that people were trying to harm him, feeling that

 2   other people were out to get him, after -- even

 3   after staff would intervene and try to investigate

 4   and assess the situation where no -- none of the

 5   allegations were founded he continued to remain very

 6   vigilant, very suspicious.

 7        Q.     Now, during the course of the competency

 8   evaluation was Mr. Goldberg also administered any

 9   type of medication as part of the competency

10   evaluation process?

11        A.     Yes.

12        Q.     Okay.  What medications are you aware

13   that Mr. Goldberg was given to try to assist him

14   during the competency evaluation process?

15        A.     Well, he met with medical staff even

16   before he came to the FDC Miami.  His medication

17   regimen did change throughout the course of

18   his treat- -- or, I'm sorry, his evaluation at our

19   facility.

20             One note of concern was that he even

21   reported to the psychiatrist that he had taken a

22   pill from another inmate.  I believe he had advised

23   the psychiatrist this, which is just another

24   indication of his very poor functioning on the unit,

25   and even with multiple medication changes at times

Case 3:17-cr-00249-BJD-JRK  Document 39  Filed 01/21/16  Page 19 of 58 PageID 149

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                    Page 18

1   he would report that his symptoms would decrease,

2   however, still as per the review of Dr. Gonzalez's

3   notes his mental state remained relatively unstable.

4        Q.     And what was the final medication that

5   was prescribed to Mr. Goldberg?

6        A.     At the time of this report, which was

7   close in time to the time that he left our facility,

8   he was prescribed Olanzapine.

9        Q.     And what is Olanzapine, Dr. Feldman?

10       A.     Olanzapine is an antipsychotic or it's a

11  medication that is used to treat symptoms of

12  psychosis.  He was also prescribed an

13  antidepressant, 14 47 Citalopram that is used to

14  treat and Mr. Goldberg reported and even exhibited

15  many symptoms of chronic depression.  And he was

16  also prescribed Clonazepam which is an antianxiety

17  medication.

18       Q.     Okay.  Dr. Feldman, does there come a

19  point in time as part of the evaluation process that

20  in addition to the interviews that you also moved

21  towards administering tests of Mr. Goldberg as part

22  of the effort to determine a diagnosis, if he has a

23  mental illness or mental disorder?

24       A.     Well, the tests, some of the tests are

25  used to aid in making a diagnosis but not used

 1   solely for that purpose.

 2        Q.     I would like to talk about one of the

 3   tests that was administered to Mr. Goldberg, the

 4   MMPI-2RF.  Are you familiar with that test?

 5        A.     Yes.

 6        Q.     What is the purpose of that test,

 7   Dr. Feldman?

 8        A.     That test was administered to

 9   Mr. Goldberg in order to assess his psychological

10   functioning.

11        Q.     And what were the results of that test

12   after it was administered to Mr. Goldberg?

13        A.     Mr. Goldberg's overall responses on the

14   test suggested that he was over reporting

15   psychiatric symptoms that, as well as additional

16   bodily complaints that are not typically endorsed by

17   individuals that have genuine impairment in these

18   areas.  Based on that response I was unable to make

19   any additional interpretation.

20        Q.     The next test that I'd like to discuss

21   with you is the SIRS-2.  Was that administered to

22   Mr. Goldberg?

23        A.     Yes.

24        Q.     And are you familiar with that test,

25   Dr. Feldman?

1          A.      Yes.

2          Q.      What is the purpose of the SIRS-2 test?

3          A.      The SIRS-2 was administered to

4    Mr. Goldberg in order to assess for any malingering

5    or feigning of psychiatric impairment.

6          Q.      What were the results of that test

7    administered to Mr. Goldberg?

8          A.      The results on this test fell in a --

9    there are several different categories.  His results

10   did not fall within the feigning range and they were

11   more consistent with -- it's classified as

12   indeterminate meaning that no additional evidence

13   existed to classify Mr. Goldberg as feigning

14   psychiatric impairment.

15         Q.      Dr. Feldman, based on the results of the

16   tests that you've described, the information that

17   you reviewed, the interviews with Mr. Goldberg and

18   your overall observations of him during the

19   competency evaluation timeframe, were you able to

20   develop a diagnosis of whether or not Mr. Goldberg

21   is suffering from a mental illness or mental

22   disorder?

23         A.      Yes.

24         Q.      What was your diagnosis, Dr. Feldman?

25         A.      I assigned a diagnosis of unclassified

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 22 of 58 PageID 152

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                          Page 21

 1  schizophrenia spectrum and other psychotic disorder

 2  and --

 3      Q.      Go right ahead, I'm sorry.

 4      A.      And I assigned this diagnosis in

 5  Mr. Goldberg's case for several different reasons.

 6  The majority of his mental state throughout the

 7  evaluation period, as well as a review of many of

 8  the records that I received and was able to review

 9  suggested significant deficits in Mr. Goldberg's

10  perceptions of reality.  And even unfortunately the

11  records had many different types of diagnosis

12  ranging from anxiety disorder to even schizophrenia.

13          I assigned this diagnosis based on a

14  degree of diagnostic uncertainty, and, also, the

15  fact that since Mr. Goldberg at the time is

16  currently 20, to make a diagnosis of schizophrenia,

17  I believe that additional time would be necessary in

18  order to accurately rule out or determine whether

19  Mr. Goldberg suffers from schizophrenia or another

20  type of thought disorder.

21      Q.      Dr. Feldman, once you had determined a

22  diagnosis of the unspecified schizophrenia spectrum

23  which affects his thought order process, I would

24  next like to move towards the test you administered

25  regarding competency.

1              As part of the competency evaluation was

2      Mr. Goldberg administered what is referred to as the

3      GCCT-MSH?

4           A.      Yes.

5           Q.      Are you familiar with that test?

6           A.      Yes.

7           Q.      What is the purpose of that test,

8      Dr. Feldman?

9           A.      This test was administered to

10     Mr. Goldberg in terms of assessing his factual

11     understanding of the legal system.

12          Q.      When you say the factual understanding

13     of the legal system, please explain what you mean by

14     that.

15          A.      The test is composed of different

16     elements that only assess someone's or a defendant's

17     knowledge of, for example, the locations of the

18     major courtroom participants, the roles of the

19     courtroom participants, a very brief explanation of

20     the charges against them and any type of possible

21     penalty that they may be facing.  The test is not

22     assessed for any type of ability to appreciate their

23     own legal situation.

24          Q.      What were the results of that test when

25     it was administered to Mr. Goldberg?

1      A.      On this test Mr. Goldberg exhibited a

2    good factual understanding of the legal process.

3      Q.      Was his score consistent with that of an

4    individual who would be competent to stand trial?

5      A.      Yes.

6      Q.      I'd next like to talk about an

7    additional test that was administered as part of the

8    competent process referred to as the Mac-CAT-CA.

9    Are you familiar with that test?

10     A.      Yes.

11     Q.      What is the purpose of that test,

12   Dr. Feldman?

13     A.      This test was administered to

14   Mr. Goldberg in order to provide a more

15   comprehensive assessment of his not only factual

16   understanding of the courtroom process and the

17   courtroom proceedings, this test also assesses for

18   his appreciation of how he is likely to be treated

19   throughout the course of the process of

20   adjudication.

21     Q.      Now, focusing on the first part of that

22   test that evaluates his competency for understanding

23   courtroom processes, how did he score on that part

24   of the test, Dr. Feldman?

25     A.      He evidenced no impairment, similar to

1   the Georgia Core Competency Test, the GCCT.

2        Q.      The second part of that test that

3   evaluates competency in terms of the ability to

4   appreciate, Mr. Goldberg's ability to appreciate his

5   legal situation, how did he score on that portion of

6   the test?

7        A.      Well, that's actually the third part of

8   the test, there is also a second part that assesses

9   for reasoning.  But, again, it's not reasoning about

10  his own situation, it's reasoning about a

11  hypothetical case but in terms of the third part of

12  the test where Mr. Goldberg is asked specific

13  questions about how he is likely to be treated

14  during the process of the legal proceedings he did

15  score in the clinically impaired range.

16       Q.      What does that mean that he scored in

17  the clinically impaired range?

18       A.      That means that due to his belief

19  system, he believes -- that interfered with his

20  ability to provide meaningful coherent information

21  that would exhibit a rational understanding of the

22  charges against him, as well as a rational

23  understanding of an ability for him to assist in his

24  defense.

25       Q.      So, Dr. Feldman, just to make sure I

1   understand, on the Mac-CAT-CA the first two portions

2   or sections of it he met the standard for

3   competency, but it is the third portion regarding

4   the ability to appreciate his own legal situation is

5   where the clinically -- where he was found to be

6   clinically impaired; is that correct?

7        A.     Well, this test, if I can just -- this

8   test is not designed to follow any type of, whether

9   it's a federal standard for competency, it just

10  assesses those areas, those three areas.  But in

11  terms of the last area on the test is appreciation,

12  that is where his scores were impaired.

13       Q.     Dr. Feldman, based on your evaluation of

14  Mr. Goldberg's competency, is he actively displaying

15  symptoms of a mental disorder that severely impairs

16  his rational understanding of the legal proceedings

17  against him?

18       A.     Yes.

19       Q.     And is it also likely that based on your

20  observations and on the evaluation, the competency

21  evaluation period that his current mental state will

22  interfere with his ability to assist in his own

23  defense?

24       A.     Yes.

25       Q.     Finally, Dr. Feldman, based on your

 1   evaluation process, the interviews, the tests, the

 2   review of the records, what is your opinion

 3   regarding whether or not Mr. Goldberg is currently

 4   competent to stand trial?

 5        A.    My opinion is that at this time he is

 6   not competent or he is incompetent to proceed with

 7   any legal proceeding.

 8        Q.    Dr. Feldman, as part of the competency

 9   evaluation period, you authored an approximate

10   nine-page report; is that correct?

11        A.    Yes.

12             MR. FREIN:  And, Your Honor, at this

13        time based on conversations with counsel I would

14        move what's been marked as Government's

15        Exhibit 2 into evidence.  Government's Exhibit 2

16        which is the nine-page forensic evaluation

17        report authored by Dr. Feldman with an

18        additional cover page dated November the 13th,

19        2015 signed by the warden, R.C. Cheatham, if I'm

20        pronouncing that correctly, from the Miami

21        Detention Center.

22             THE COURT:  Mr. Shorstein?

23             MR. SHORSTEIN:  Your Honor, I have no

24        objection to entering the report.  I would move

25        whether now is the right time or the end of the

1      hearing that it be filed under seal.

2              THE COURT:  I will receive the

3      government's exhibit, the report of Dr. Feldman

4      and we can discuss whether it should be sealed

5      and the grounds for that after we're done with

6      that, Dr. Feldman.  Mr. Frein?

7              (Government's Exhibit-2 was received

8   into evidence.)

9              MR. FREIN:  Your Honor, at this time I

10     have no further questions for Dr. Feldman.

11             THE COURT:  Mr. Shorstein?

12             MR. SHORSTEIN:  I have no questions,

13     Your Honor.

14             THE COURT:  Dr. Feldman, I have a few

15     questions for you.  Let me start by asking you

16     this, how many times during Mr. Goldberg's stay

17     at the detention center in Miami did you

18     actually interview him yourself?

19             THE WITNESS:  September 29th, 2015, that

20     was the first contact that I had with him and on

21     that day I had multiple contacts with him that

22     spanned in the morning as well as in the

23     afternoon.  I also had contact approximately

24     four additional days.

25             THE COURT:  Were there others that

1     assisted you with your evaluation who either

2     also interviewed Mr. Goldberg and reported the

3     results of their interviews to you or were there

4     others who assisted you with administering the

5     tests?

6              THE WITNESS:  There was one other

7     individual.

8              THE COURT:  And who was that?

9              THE WITNESS:  That was Ms. Iliana

10    Jimenez.

11             THE COURT:  And what is her position?

12             THE WITNESS:  She is a psychology

13    graduate student.  It's a temporary position.

14             THE COURT:  At one point in answering

15    Mr. Frein's questions you noted that there were

16    deficits in Mr. Goldberg's perception of

17    reality.  Could you provide any specific

18    examples regarding what you meant by that?

19             THE WITNESS:  Yes, Your Honor.  I mean,

20    there are -- just in terms of my initial contact

21    with him after explaining to Mr. Goldberg

22    numerous times that he was at our facility for

23    the evaluation and was not going to be sent to a

24    medical center for this evaluation, he continued

25    to maintain this belief that he should not be

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 30 of 58 PageID 160

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                    Page 29

```
 1    here, I'm sorry, or he should not be at our

 2    facility.

 3         Another example was numerous times he

 4    had, Mr. Goldberg had made allegations that

 5    people were harming him on the unit, that he

 6    feared for his safety at that time.  I called

 7    additional correctional staff to intervene and

 8    to investigate, which included them interviewing

 9    Mr. Goldberg.  During that time Mr. Goldberg

10    could not provide any factual information and it

11    appeared that these were more vaguely held ideas

12    that he frequently communicated to either myself

13    or to medical staff or to correctional staff on

14    the unit.

15         THE COURT:  Do you have your report in

16    front of you?

17         THE WITNESS:  Yes.

18         THE COURT:  Would you look at page 5?

19    Towards the top of that page it's the first full

20    paragraph that starts with his insight.  Do you

21    see that?

22         THE WITNESS:  Yes.

23         THE COURT:  It says his insight into his

24    mental health and legal status was impaired,

25    moreover, his judgment as to cause and effect
```

Case 3:17-cr-00249-BJD-JRK  Document 39  Filed 01/21/16  Page 31 of 58 PageID 161

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                    Page 30

 1   relations was poor.

 2          Can you elaborate on that?

 3          THE WITNESS:  Yes.  In terms of, and

 4   this goes back to page 4 of the report, where

 5   I -- it indicated that Mr. Goldberg had a very

 6   poor adjustment to our facility, refusing to

 7   shower, to maintain his cell in any type of kept

 8   fashion.  He was given numerous opportunities,

 9   warnings that he needed to take care of his

10   hygiene, take care of his behavior, his

11   interactions even on the unit.  In spite of

12   those warnings he continued to display very poor

13   hygiene.  He -- throughout staff describes him

14   as emitting very foul body odor, just constantly

15   even -- he would frequently go to medical.  He

16   was seen by medical staff in terms of the

17   lesions on his body and was advised numerous

18   times to stop picking at himself because it was

19   only serving to exacerbate the bleeding and the

20   irritation and the inflammation.

21          At points Mr. Goldberg was even able --

22   he verbalized I can't stop.  So these are all

23   examples of very poor insight to his behavior

24   and inability to see beyond what he is doing now

25   and how it might impact him in the long run.

1    THE COURT:  What about the first

2  sentence, though, on page 5 of the paragraph?  I

3  referred to his insight into his mental health

4  and I'm focusing on the next words, and his

5  legal status was impaired.

6        Could you expound on your view that his

7  insight into his legal status was impaired?

8        THE WITNESS:  Yes.  This was prominent

9  throughout the evaluation and definitely became

10  more apparent when I administered one of the

11  tests to him that assesses his appreciation of

12  the charges against him and when he was

13  questioned about the actions that led to his

14  offense or the -- his arrest he frequently

15  indicated that he should not be charged for

16  these actions, that this was more due to

17  mislabelling, mislabelling as a terrorist and he

18  would try to explain his logic as to why he was

19  engaging in the alleged offense conduct, that

20  appeared to be a distorted type of logic.

21        THE COURT:  In what way?

22        THE WITNESS:  For example, in terms of

23  when he -- when Mr. Goldberg was asked whether

24  or not he feels that his own attorney is likely

25  to help him with the legal system or throughout

1   the legal system in defending him, Mr. Goldberg

2   verbalized that he has concerns that his lawyer

3   already feels that he has been labeled as a

4   terrorist and feels that he will be treated less

5   fairly than other defendants charged with

6   similar offenses.

7        THE COURT:  Turning to page 6 of your

8   report under the section psychological test

9   results, the MMPI-2RF is a test that you

10  administered and you discussed that with

11  Mr. Frein, and you said that in your report

12  Mr. Goldberg's responses were reflective of over

13  reporting of severe psychological impairment and

14  you continue on.

15        Then I believe you stated that the

16  SIRS-2 was indeterminate, I think was your word,

17  whether he was feigning a mental disorder.

18        On the next page you discuss in some

19  detail your view with respect to whether

20  Mr. Goldberg is malingering.  And if I'm reading

21  your report correctly addressing malingering, it

22  seems to me, from what I'm reading is that you

23  leave open the possibility that Mr. Goldberg is

24  malingering, there is a possibility that he is

25  not malingering at all and there is a third

 1  possibility that he might be malingering some

 2  but have a genuine condition, as you say,

 3  regarding his mental health status.

 4        Is that -- did I summarize that

 5  accurately, albeit in layman's terms, and would

 6  you expect a four-month evaluation to focus or

 7  distinguish between which of those it might be

 8  in terms of malingering?

 9        THE WITNESS:  Your Honor, just to answer

10  the first part of your question, that paragraph,

11  the paragraph on page 7, the last paragraph, I

12  attempted to convey that in any type of forensic

13  evaluation malingering should be considered.

14        The second part I think was consistent

15  with what you said, that there are some

16  indications, for example, the MMPI-2 that did

17  show signs that he could possibly be

18  exaggerating mental health symptoms.

19        And then the third part I -- in taking

20  together all of the results, including the

21  review of the records and the course of

22  treatment at our facility, I did not assign that

23  classification.

24        However, now in answering the second

25  part, Your Honor, I do believe that in any

 1  future evaluation, and especially over of a

 2  four-month period, that the issue of feigning,

 3  and please note that even though Mr. Goldberg

 4  could possibly be exaggerating his mental health

 5  symptoms, there is significant evidence that he

 6  does suffer from a mental illness, but I do

 7  believe that in further evaluations that should

 8  be addressed.

 9         THE COURT:  But now looking at the last

10  page of your report, page 9, Mr. Frein asked you

11  some questions about this but I wanted to ask

12  you a couple more questions.

13         In the first paragraph it's continuing

14  from page 8 towards the middle of the paragraph

15  you write Mr. Goldberg's score in the clinical

16  psychologic impairment range in his ability to

17  appreciate his own legal situation.  The

18  defendant's score on this portion of the test

19  suggests that his appreciation of how he is

20  likely to be treated in the course of

21  adjudication or rational understanding of the

22  proceedings against him is adversely affected by

23  symptoms of a mental disorder.

24         And when you were explaining that to

25  Mr. Frein you said something to the effect, and

Case 3:17-cr-00249-BJD-JRK  Document 39  Filed 01/21/16  Page 36 of 58 PageID 166

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                    Page 35

1  I'm not trying to quote you, but something to

2  the effect that his belief system had something

3  to do with his performance on this portion of

4  the Mac-CAT-CA test.

5       Can you, first of all, tell me and

6  describe in more detail what that test consists

7  of?  In other words, what are the questions and

8  what were Mr. Goldberg's answers?  And then if

9  you could expound upon what you meant, if I

10  heard you right, that his belief system affected

11  his performance?

12       THE WITNESS:  Yes, Your Honor.  This

13  section of the test consists of questions that

14  directly relate to Mr. Goldberg's beliefs about

15  his own situation, his own legal situation.

16       For example, one of the questions is,

17  and I don't have the test in front of me, but it

18  asks do you feel more or less or about the

19  same -- I'm sorry.  Do you feel more likely,

20  less likely, or about the same to be treated

21  fairly by the legal system?

22       Mr. Goldberg's responses suggested some

23  very flawed reasoning.

24       For example, he feels, as I said earlier

25  hopefully in answering one of your questions, he

1   feels that his attorney is less likely to help

2   him because of the fact that Mr. Goldberg

3   believes his attorney thinks of him as a

4   terrorist and will, therefore, assist him less.

5         Another factor or another question on

6   this test is Mr. Goldberg is asked are you more

7   likely, less likely, or about the same to be

8   found guilty as compared to other defendants who

9   are charged with similar charges.

10        In Mr. Goldberg's responses, again in my

11  opinion indicated very flawed, very irrational

12  logic in that he believes that because of the

13  facts that his motives were based on -- to

14  become a journalist or to become even he had

15  said an employee of the FBI, that he feels he is

16  less likely to be found guilty because of, for

17  one, those -- his actions.  And he also

18  expressed the belief of -- there were -- on the

19  one hand he felt he was less likely to be found

20  guilty because of his motives in that he was

21  attempting to become a journalist, he was not

22  attempting to portray himself or -- I'm sorry,

23  he was indicating he was attempting to portray

24  himself as a terrorist in order to identify

25  other terrorists.

Case 3:17-cr-00249-BJD-JRK  Document 39  Filed 01/21/16  Page 38 of 58 PageID 168

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                              Page 37

1          He also reasoned that he is more likely

2     to be found guilty because of the media

3     sensation that the case has drawn and he

4     verbalized the fact that his case has received

5     more media attention than other cases of

6     terrorism in the past and somehow -- I'm having

7     trouble explaining this because this is, in my

8     opinion, very distorted beliefs --

9          THE COURT:  Well, what --

10         THE WITNESS:  -- that --

11         THE COURT:  I'm sorry, go ahead.

12         Well, let me ask you a couple of

13    questions about that because I think I could see

14    someone believing that it would not be

15    irrational to think that you might have a chance

16    of being found not guilty because your motive

17    was to be a journalist, or your motive was to

18    work for the FBI in doing what you were doing.

19         In other words, if you just take the

20    facts that are alleged in the complaint if

21    Mr. Goldberg's position was at trial that he

22    wasn't acting as a terrorist and that wasn't his

23    intent and his intent was to be a journalist or

24    his intent was to help the FBI, then it wouldn't

25    seem necessarily to be irrational that he would

Case 3:17-cr-00249-BJD-JRK  Document 39  Filed 01/21/16  Page 39 of 58 PageID 169

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                    Page 38

 1  think that would create a situation where he is

 2  less likely to be found guilty.

 3          THE WITNESS:  Shall I -- would you like

 4  me to add, Your Honor?

 5          THE COURT:  Well, I would just like to

 6  hear your reaction to what I said.

 7          THE WITNESS:  In terms of what you said,

 8  Your Honor, I do believe that there are much

 9  more legal, and I know that I was not asked to

10  provide an opinion on criminal responsibility,

11  but I believe that there are many different

12  alternative actions he could have chosen to --

13  if, in fact, he did want to, for example, work

14  with the FBI.  And to my knowledge, there has

15  not been any verification that he had contacted

16  the FBI to report this or to request an interest

17  in working with them.  And in my opinion that

18  shows very, I guess, going back to the cause and

19  effect, very poor cause and effect thought

20  process.

21          THE COURT:  And what about the comment

22  you made, and, again, I'm not trying to quote

23  you, but you said something to the effect

24  because of his belief system he was unable to, I

25  think you said, appreciate his own legal

```
 1   situation.

 2          When you said belief system, I wasn't

 3   clear what you meant by that.

 4          THE WITNESS:  Your Honor, I think in

 5   belief system, the beliefs that I was explaining

 6   in answering some of his responses to those

 7   questions on the tests are some examples of his

 8   belief system.

 9          THE COURT:  All right.  Mr. Frein, do

10   you have any other questions?

11          MR. FREIN:  I do not, Your Honor.

12          THE COURT:  Mr. Shorstein, do you?

13          MR. SHORSTEIN:  No, Your Honor.

14          THE COURT:  All right.  Dr. Feldman,

15   you're excused.  Thank you.

16          THE WITNESS:  Thank you, Your Honor.

17          (Witness excused.)

18          THE COURT:  All right.  Do either of you

19   have any argument you wish to make regarding the

20   competency issue?

21          MR. FREIN:  None from the United States,

22   Your Honor.

23          THE COURT:  Mr. Shorstein?

24          MR. SHORSTEIN:  Nothing on behalf of

25   Mr. Goldberg, Your Honor.
```

1          THE COURT:  All right.  Well, I think --

2    I was trying to understand a little better what

3    Dr. Feldman meant that Mr. Goldberg has a

4    deficit in his ability to appreciate his own

5    legal situation because usually you find that

6    someone, at least my experience has been, that

7    someone who as an inability to appreciate his

8    own legal situation also shows sign of an

9    ability to appreciate the legal system more

10   objectively.  And here Mr. Goldberg has shown

11   that he understands the legal system, he

12   understands what everyone's role is but he

13   doesn't appreciate his own legal situation.

14          I have to tell you that the examples

15   that Dr. Feldman gave didn't overwhelm me in

16   terms of her finding.  And I say that because I

17   could see, as I told her, where someone might

18   believe that if his defense was that he was

19   committing these various acts because he wanted

20   to be a journalist or he committed these acts

21   because he wanted to work for the FBI could

22   provide a defense in the case.  We've seen

23   defenses before where defendants have claimed

24   that their motive in committing certain actions

25   wasn't -- wasn't for the purposes that seemed

 1   maybe obvious on its face or what the

 2   allegations were but they were doing it because

 3   they were trying to help law enforcement or they

 4   were doing it for other reasons.

 5           So I wasn't greatly impressed with that,

 6   and if Mr. Goldberg's view is that he might be

 7   more likely to be found guilty because of the

 8   attention the media gave his case, that would be

 9   in line with defendants who move for a change of

10   venue because they are afraid -- that the

11   defendant is afraid he or she can't get a fair

12   trial because of the media, so that doesn't seem

13   irrational to me either.

14           And even believing that you're going to

15   be treated differently because it's alleged that

16   you are a terrorist doesn't seem to me to be

17   irrational.  Maybe if you think your lawyer will

18   treat you differently it crosses the line from

19   rational to irrational, but nevertheless given

20   the other findings regarding Mr. Goldberg's

21   mental health condition and, specifically given

22   that he is displaying symptoms of a mental

23   disorder that severely impair his rational

24   understanding of the legal proceedings against

25   him, I am going to find that he is incompetent

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 43 of 58 PageID 173

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                                    Page 42

 1    to proceed at this point.

 2           I think that a four-month evaluation

 3    will further shed light on Dr. Feldman's view

 4    that Mr. Goldberg does not have the sufficient

 5    ability to appreciate his own legal situation.

 6    It will also shed light on whether he is

 7    malingering and allow him to be treated for what

 8    appears to be one or more mental disorders that

 9    very likely would affect his ability to assist

10    counsel in the case.

11           So I will find that he is mentally

12    incompetent to stand trial at the present time

13    because he is unable to understand the nature

14    and consequences of the proceedings against him

15    or to assist properly in his defense and I will

16    commit him to the custody of the Attorney

17    General to undergo treatment including

18    restoration and further evaluation.

19           Let's take up together with that the

20    notice of intent to rely on insanity defense

21    that was filed, document 23 by Mr. Shorstein

22    September 3, 2015.

23           Mr. Frein, did you have a motion in that

24    regard?

25           MR. FREIN:  Your Honor, I did pursuant

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 44 of 58 PageID 174

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015                                                    Page 43

1   to 18 United States Code, Section 42, 42(A) the

2   United States would make a motion that the

3   defendant also be evaluated for sanity at the

4   time of the offense, that would be

5   contemporaneous with his competency evaluation

6   at whatever medical center he is designated at.

7         THE COURT:  And, Mr. Shorstein, do you

8   have any objection to the government's motion?

9         MR. SHORSTEIN:  No objection, Your

10  Honor.

11        THE COURT:  I'll grant the government's

12  motion and, also, order that the evaluation

13  process of Mr. Goldberg include a determination

14  or at least an opinion by the -- wherever he is

15  evaluated, I'm hoping it's Butner but I had

16  ordered that last time.  And, again, let me just

17  say Mr. Goldberg's insistence that he should be

18  at a medical center may very well have been

19  because I ordered that he go to Butner, which is

20  a medical center, so that may not have been

21  reflective of any mental health problem that he

22  had or any inability to understand reality, he

23  may just have remembered and he may have read

24  the order where I directed that.  But as is

25  not -- it's not unusual for the Bureau of

 1   Prisons to disregard a judge's recommendations

 2   and that's what the Bureau of Prisons did in

 3   this instance.  But I am assuming that he will

 4   go to the Federal Medical Center at Butner and

 5   he can be evaluated both for competency, he can

 6   be treated for competency or treated for

 7   incompetency and he can also be evaluated to

 8   determine whether he was sane at the time of the

 9   offense.

10        And I will direct that the portion of

11   the evaluation addressing sanity at the time of

12   the offense just be provided to counsel and not

13   the court.

14        I've had occasion in the past where I've

15   been provided with that and I, of course, have

16   nothing to do with any issue related to whether

17   he was sane at the time of the offense.

18        Now, with respect to the sealing of the

19   report, Mr. Shorstein, I'm going to keep the

20   report sealed and allow you seven days to cite

21   authority for allowing the report to remain

22   sealed.

23        And then, Mr. Frein, I'll give you seven

24   days to respond to that and if there is any

25   interested party that wish to be heard on that,

 1 | that party or those parties will also have the

 2 | opportunity to file something within seven days

 3 | of the defendant's motion to seal.

 4 |        So, let's see, today is the 14th, why

 5 | don't I give you until the 22nd, Mr. Shorstein.

 6 |        MR. SHORSTEIN:  That's fine, Your Honor,

 7 | I'll have it done before then.

 8 |        THE COURT:  Okay.  And then, Mr. Frein,

 9 | I'll give you until 29th.

10 |        MR. FREIN:  Yes, Your Honor.

11 |        THE COURT:  To file the government's

12 | response and any other interested party can file

13 | a response to the defendant's motion on that day

14 | and then I'll take up the issue whether it

15 | should remain sealed.

16 |        All right.  So I'll enter a written

17 | order shortly finding Mr. Goldberg incompetent

18 | and enter my finding here and also order that he

19 | be examined with regard to sanity at the time of

20 | the offense.

21 |        I think that conversation is everything

22 | we need to do today.

23 |        I did want to mention this, though, in

24 | regard to the preliminary hearing the

25 | preliminary hearing of course was supposed to be

 1  held within 14 days of Mr. Goldberg's arrest and

 2  under Rule 5.1B the court can extend that time

 3  with the consent of the defendant or on a

 4  showing of extraordinary circumstances and

 5  justice requires the delay.  Given that I've

 6  found Mr. Goldberg incompetent, I can't expect

 7  him to consent to a delay in the preliminary

 8  hearing, but I do find that there are

 9  extraordinary circumstances that exist and

10  justice requires the delay of the preliminary

11  hearing.  And essentially Mr. Goldberg is

12  incompetent to proceed and he could not assist

13  his counsel in the preparation of the

14  preliminary hearing and he could not assist his

15  counsel during the preliminary hearing.  So

16  we'll continue that hearing until a later time.

17        With respect to detention, good cause

18  continues to exist to delay the detention

19  hearing because Mr. Goldberg has been found

20  incompetent to proceed, and then with respect to

21  the Speedy Trial Act, the government, of course

22  had 30 days from the filing of the complaint to

23  present this matter to the grand jury but with

24  respect to the Speedy Trial Act any issues

25  related to the competency with Speedy Trial so

1        by my calculation there are 25 days left and

2        that will remain suspended until and if building

3        is found competent at a later date.

4               Do you agree with those matters with

5        respect to the preliminary hearing and detention

6        and the Speedy Trial Act, Mr. Frein?

7               MR. FREIN:  The United States does, Your

8        Honor.

9               THE COURT:  Do you, Mr. Shorstein?

10              MR. SHORSTEIN:  We do, Your Honor.

11              THE COURT:  Okay.  I think that takes

12       care of everything.  We'll be in recess.  All

13       rise.

14              (Whereupon, the proceedings were

15   concluded at 12:06 p.m.)

16                        - - -

17

18

19

20

21

22

23

24

25

COURT CERTIFICATE


STATE OF FLORIDA)
                )
COUNTY OF DUVAL )


        I, Allison B. Murray, Registered

Professional Reporter, certify that I was authorized

to and did stenographically report the foregoing

proceedings and that the transcript is a true and

complete record of my stenographic notes.


        DATED this 20th day of January 2016.

_____

        Allison B. Murray, RPR

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

Index: 1..assist

**1**

**1** 11:7,12
**10th** 4:10,13
**12:06** 47:15
**13** 5:13
**13th** 26:18
**14** 4:2 18:13 46:1
**14th** 45:4
**15** 8:10
**15th** 4:21 5:1
**16th** 5:5
**18** 43:1

**2**

**2** 26:15
**20** 12:11 21:16
**2006** 11:3
**2015** 4:2,10,13,21 5:1,5,
10,14,20,24 12:11 26:19
27:19 42:22
**22nd** 45:5
**23** 42:21
**25** 47:1
**28th** 5:10
**29th** 27:19 45:9

**3**

**3** 42:22
**30** 46:22
**3:15-mj-1170-jrk** 4:5
8:17
**3rd** 5:20

**4**

**4** 30:4
**42** 43:1

**42(A)** 43:1
**45** 8:21
**47** 18:13

**5**

**5** 29:18 31:2
**5.1B** 46:2

**6**

**6** 32:7

**7**

**7** 33:11
**7th** 5:24

**8**

**8** 34:14

**9**

**9** 34:10

**A**

**ability** 22:22 24:3,4,20,
23 25:4,22 34:16 40:4,9
42:5,9
**accurately** 21:18 33:5
**acknowledge** 13:14,20
**acknowledged** 13:24
**Act** 46:21,24 47:6
**acting** 37:22
**actions** 31:13,16 36:17
38:12 40:24
**actively** 25:14
**acts** 40:19,20
**add** 38:4
**addition** 14:6 16:24
18:20

**additional** 14:20 19:15,
19 20:12 21:17 23:7
26:18 27:24 29:7
**addressed** 34:8
**addressing** 32:21
44:11
**adjudication** 23:20
34:21
**adjusting** 15:5
**adjustment** 30:6
**administer** 6:20 8:8
**administered** 7:19
17:8 19:3,8,12,21 20:3,7
21:24 22:2,9,25 23:7,13
31:10 32:10
**administering** 18:21
28:4
**adversely** 34:22
**advise** 9:7
**advised** 6:6 17:22
30:17
**affect** 42:9
**affected** 34:22 35:10
**affects** 21:23
**affidavit** 14:16
**afraid** 41:10,11
**afternoon** 27:23
**agree** 7:4 47:4
**agreed** 6:5
**agreement** 7:7
**ahead** 21:3 37:11
**aid** 18:25
**albeit** 33:5
**allegations** 17:5 29:4
41:2
**alleged** 14:18 31:19
37:20 41:15
**allowing** 44:21
**alternative** 38:12
**America** 4:4

**answering** 28:14 33:24
35:25 39:6
**answers** 35:8
**antianxiety** 18:16
**antidepressant** 18:13
**antipsychotic** 18:10
**anxiety** 21:12
**apparent** 31:10
**appearance** 4:12,14,23
**appeared** 29:11 31:20
**appears** 42:8
**appointed** 4:16
**appreciation** 23:18
25:11 31:11 34:19
**approximate** 26:9
**approximately** 27:23
**area** 13:8,14 14:23
25:11
**areas** 19:18 25:10
**argument** 39:19
**argumentativeness**
16:17
**arrangements** 7:12,13
**arrest** 31:14 46:1
**arrested** 4:11
**arrive** 12:5
**arrived** 5:9 12:10 15:6
**asks** 35:18
**assess** 17:4 19:9 20:4
22:16
**assessed** 22:22
**assesses** 23:17 24:8
25:10 31:11
**assessing** 22:10
**assessment** 23:15
**assign** 33:22
**assigned** 12:12,16
20:25 21:4,13
**assist** 17:13 24:23
25:22 36:4 42:9,15

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 51 of 58 PageID 181

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015
Index: assisted..correctly

46:12,14

**assisted** 28:1,4

**assuming** 44:3

**attempted** 33:12

**attempting** 36:21,22,23

**attention** 37:5 41:8

**attorney** 14:20 31:24 36:1,3 42:16

**Attorney's** 8:3,6

**AUSA** 9:8

**authored** 26:9,17

**authority** 44:21

**aware** 17:12

**B**

**B-a-t-h** 10:9

**back** 5:18 8:15 30:4 38:18

**based** 11:16 14:24 15:18,25 16:10 19:18 20:15 21:13 25:13,19,25 26:13 36:13

**Bath** 9:24 10:4

**behalf** 5:24 8:18 39:24

**behaved** 16:15

**behavior** 15:9 16:15,17 30:10,23

**behavioral** 15:2,17 16:9

**behaviors** 14:25

**belief** 24:18 28:25 35:2, 10 36:18 38:24 39:2,5,8

**beliefs** 35:14 37:8 39:5

**believes** 24:19 36:3,12

**believing** 37:14 41:14

**bleeding** 30:19

**bodily** 19:16

**body** 30:14,17

**bordered** 16:16

**briefly** 14:11

**building** 47:2

**Bureau** 11:1 43:25 44:2

**Butner** 43:15,19 44:4

**C**

**calculation** 47:1

**call** 9:5,14

**called** 15:9 29:6

**care** 30:9,10 47:12

**case** 4:3,5 5:8 8:16,17 13:7 21:5 24:11 37:3,4 40:22 41:8 42:10

**cases** 37:5

**categories** 20:9

**cell** 30:7

**center** 5:10 10:20,23 12:2 13:25 16:19,23 26:21 27:17 28:24 43:6, 18,20 44:4

**Chaddock** 7:23

**chance** 37:15

**change** 17:17 41:9

**charged** 4:9 31:15 32:5 36:9

**charges** 14:17 22:20 24:22 31:12 36:9

**Cheatham** 26:19

**childlike** 16:15,17

**chosen** 38:12

**chronic** 18:15

**circumstances** 46:4,9

**Citalopram** 18:13

**cite** 44:20

**claimed** 40:23

**classification** 33:23

**classified** 20:11

**classify** 20:13

**clean** 15:12

**cleanliness** 15:9

**clear** 39:3

**clerk's** 8:7

**clinical** 34:15

**clinically** 24:15,17 25:5,6

**Clonazepam** 18:16

**close** 18:7

**Code** 43:1

**coherent** 24:20

**colleagues** 7:15

**commenced** 5:11

**comment** 38:21

**commission** 7:15,18

**commit** 42:16

**committed** 40:20

**committing** 40:19,24

**communicated** 29:12

**communications** 14:20

**compared** 36:8

**competency** 5:3,22 6:3 12:13,17,19 13:2 14:14 15:3,20 16:12 17:7,9,14 20:19 21:25 22:1 23:22 24:1,3 25:3,9,14,20 26:8 39:20 43:5 44:5,6 46:25

**competent** 5:7,16 23:4, 8 26:4,6 47:3

**complaint** 4:10 37:20 46:22

**complaints** 14:16 19:16

**composed** 22:15

**comprehensive** 23:15

**concern** 17:20

**concerns** 15:14 32:2

**concluded** 47:15

**condition** 33:2 41:21

**conduct** 6:5,22 14:3,18, 21 31:19

**conducted** 14:24

**conducting** 12:17

**conference** 5:23 6:14 15:23

**conferencing** 6:6,8,11

**confidentiality** 13:2, 16,22

**consent** 46:3,7

**consequences** 42:14

**considered** 33:13

**consistent** 20:11 23:3 33:14

**consists** 35:6,13

**constantly** 30:14

**contact** 7:11 12:20 13:8,11,13 15:19 16:11, 14 27:20,23 28:20

**contacted** 38:15

**contacts** 27:21

**contained** 16:25

**contemporaneous** 43:5

**content** 16:24

**continuance** 4:19 5:2

**continue** 6:9,14 32:14 46:16

**continued** 4:20 16:22 17:5 28:24 30:12

**continues** 46:18

**continuing** 34:13

**convened** 6:3 8:21

**conversation** 45:21

**conversations** 11:16 26:13

**convey** 33:12

**Core** 24:1

**correct** 16:2 25:6 26:10

**corrected** 8:24

**correctional** 29:7,13

**correctly** 26:20 32:21

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

**counsel** 26:13 42:10 44:12 46:13,15

**couple** 34:12 37:12

**court** 4:3 5:3 7:3,8 8:14, 15 9:7,11,15,18 10:2,5, 8,10,12 11:9,11,17,20, 23 12:18 14:12 16:3 26:22 27:2,11,14,25 28:8,11,14 29:15,18,23 31:1,21 32:7 34:9 37:9, 11 38:5,21 39:9,12,14, 18,23 40:1 43:7,11 44:13 45:8,11 46:2 47:9, 11

**courthouse** 6:20 8:1,5

**courtroom** 4:8 8:19 22:18,19 23:16,17,23

**cover** 26:18

**create** 38:1

**criminal** 4:9 14:16 38:10

**crosses** 41:18

**current** 10:22 25:21

**curriculum** 11:7

**custody** 42:16

— — —

**D**

**date** 4:13 6:9 47:3

**dated** 5:13 26:18

**day** 4:10 12:14,15 27:21 45:13

**days** 27:24 44:20,24 45:2 46:1,22 47:1

**December** 4:2 5:20,24

**decrease** 18:1

**defendant** 12:2,21 41:11 43:3 46:3

**defendant's** 22:16 34:18 45:3,13

**defendants** 32:5 36:8 40:23 41:9

**defender** 4:15,16

**defending** 32:1

**defense** 6:1 24:24 25:23 40:18,22 42:15,20

**defenses** 40:23

**deficit** 40:4

**deficits** 21:9 28:16

**degree** 21:14

**delay** 46:5,7,10,18

**depression** 18:15

**describe** 14:11 35:6

**describes** 30:13

**designated** 43:6

**designed** 25:8

**detail** 32:19 35:6

**detain** 4:18

**detention** 4:25 5:2,9 10:20,23 12:1 15:1 26:21 27:17 46:17,18 47:5

**determination** 43:13

**determine** 5:6 18:22 21:18 44:8

**determined** 21:21

**develop** 20:20

**diagnosis** 18:22,25 20:20,24,25 21:4,11,13, 16,22

**diagnostic** 21:14

**differed** 4:23

**differently** 41:15,18

**difficult** 15:4

**difficulties** 6:15 15:11

**difficulty** 6:7

**direct** 44:10

**DIRECT-EXAMINATION** 10:14

**directed** 43:24

**directing** 5:5

**directly** 35:14

**discuss** 19:20 27:4 32:18

**discussed** 5:21 32:10

**discussion** 11:5 14:23

**disorder** 18:23 20:22 21:1,12,20 25:15 32:17 34:23 41:23

**disorders** 42:8

**display** 30:12

**displayed** 16:15

**displaying** 25:14 41:22

**disregard** 44:1

**disrupt** 9:9

**distinguish** 33:7

**distorted** 31:20 37:8

**Doctor** 12:9

**document** 42:21

**documents** 14:7,12,15

**drawn** 37:3

**due** 15:7 24:18 31:16

**duly** 9:25

— — —

**E**

**earlier** 7:16 35:24

**effect** 29:25 34:25 35:2 38:19,23

**effort** 18:22

**elaborate** 30:2

**elements** 22:16

**emitting** 30:14

**employed** 10:19

**employee** 36:15

**en** 9:8

**end** 26:25

**endorsed** 19:16

**enforcement** 41:3

**engaging** 31:19

**enter** 45:16,18

**entered** 5:4

**entering** 26:24

**equipment** 6:11 15:25

**essentially** 46:11

**evaluated** 5:6,12 43:3, 15 44:5,7

**evaluates** 23:22 24:3

**evaluation** 5:11 12:13, 17,19,22 13:3 14:1,2,14 15:3,21 16:11 17:8,10, 14,18 18:19 20:19 21:7 22:1 25:13,20,21 26:1,9, 16 28:1,23,24 31:9 33:6, 13 34:1 42:2,18 43:5,12 44:11

**evaluations** 34:7

**evaluator** 5:14

**everyone's** 40:12

**evidence** 11:6,14 20:12 26:15 27:8 34:5

**evidenced** 23:25

**exacerbate** 30:19

**exaggerating** 33:18 34:4

**examination** 5:3

**examined** 9:25 45:19

**examples** 28:18 30:23 39:7 40:14

**excused** 39:15,17

**exhibit** 11:7,12 24:21 26:15 27:3

**Exhibit-1** 11:13

**Exhibit-2** 27:7

**exhibited** 18:14 23:1

**exist** 46:9,18

**existed** 20:13

**expect** 33:6 46:6

**experience** 40:6

**expert** 11:18

**expired** 7:16,18

**explain** 12:18,21,25 22:13 31:18

**explaining** 28:21 34:24 37:7 39:5

Case 3:17-cr-00249-BJD-JRK   Document 39   Filed 01/21/16   Page 53 of 58 PageID 183

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

Index: explanation..hope

**explanation** 13:6,21 22:19

**expound** 31:6 35:9

**expressed** 36:18

**extend** 46:2

**extraordinary** 46:4,9

---

**F**

**F-e-l-d-m-a-n** 10:11

**face** 41:1

**facility** 12:6,10 13:1,9, 16,21 15:1,5,6 17:19 18:7 28:22 29:2 30:6 33:22

**facing** 22:21

**fact** 21:15 36:2 37:4 38:13

**factor** 36:5

**facts** 36:13 37:20

**factual** 22:10,12 23:2, 15 29:10

**fair** 41:11

**fairly** 6:15 8:2 32:5 35:21

**fall** 20:10

**familiar** 11:25 19:4,24 22:5 23:9

**fashion** 30:8

**FBI** 36:15 37:18,24 38:14,16 40:21

**FDC** 17:16

**feared** 29:6

**federal** 4:15,16 5:9 6:19 8:1 10:20,23 11:1 12:1 13:25 25:9 44:4

**feed** 8:23

**feel** 35:18,19

**feeling** 16:25 17:1

**feels** 31:24 32:3,4 35:24 36:1,15

**feigning** 20:5,10,13

32:17 34:2

**Feldman** 5:15 6:18,21 7:10 9:14,16,24 10:4,16, 18 11:8,18,25 13:6 14:12,22 16:1,5,7 18:9, 18 19:7,25 20:15,24 21:21 22:8 23:12,24 24:25 25:13,25 26:8,17 27:3,6,10,14 39:14 40:3, 15

**Feldman's** 42:3

**fell** 20:8

**felt** 36:19

**field** 11:18

**file** 45:2,11,12

**filed** 4:22 5:25 27:1 42:21

**filing** 46:22

**final** 18:4

**Finally** 25:25

**find** 7:13 40:5 41:25 42:11 46:8

**finding** 40:16 45:17,18

**findings** 41:20

**fine** 45:6

**flawed** 35:23 36:11

**Florida** 10:21,23

**focus** 33:6

**focusing** 23:21 31:4

**follow** 25:8

**forensic** 10:24 11:1,19 26:16 33:12

**forms** 14:13

**forward** 9:5

**foul** 30:14

**found** 7:15,17 9:10 25:5 36:8,16,19 37:2,16 38:2 41:7 46:6,19 47:3

**founded** 17:5

**four-month** 33:6 34:2 42:2

**free** 16:1,4

**Frein** 4:6 6:4 7:3,4,10 8:20 9:2,4,13 10:12,15 11:4,10,15,24 16:2,4,6 26:12 27:6,9 32:11 34:10,25 39:9,11,21 42:23,25 44:23 45:8,10 47:6,7

**Frein's** 28:15

**frequently** 15:14 29:12 30:15 31:14

**front** 29:16 35:17

**frustration** 16:18

**full** 10:2 29:19

**functioning** 17:24 19:10

**future** 34:1

---

**G**

**gave** 40:15 41:8

**GCCT** 24:1

**GCCT-MSH** 22:3

**general** 15:15 42:17

**generally** 13:14

**genuine** 19:17 33:2

**Georgia** 24:1

**give** 9:21 44:23 45:5,9

**God** 9:23

**Goldberg** 4:4,7,8,9,19, 24 5:5,15,18,25 7:24 8:17,18,19 12:3,5,12,16, 23 13:1,20 14:4,9,24 15:4 16:14 17:8,13 18:5, 14,21 19:3,9,12,22 20:4, 7,13,17,20 21:15,19 22:2,10,25 23:1,14 24:12 26:3 28:2,21 29:4, 9 30:5,21 31:23 32:1,20, 23 34:3 36:2,6 39:25 40:3,10 42:4 43:13 45:17 46:6,11,19

**Goldberg's** 13:5,7 14:19 16:10 19:13 21:5, 9 24:4 25:14 27:16 28:16 32:12 34:15 35:8,

14,22 36:10 37:21 41:6, 20 43:17 46:1

**Gonzalez's** 18:2

**good** 10:16,17 23:2 46:17

**government** 4:18 46:21

**government's** 11:6,11, 13 26:14,15 27:3,7 43:8, 11 45:11

**graduate** 28:13

**grand** 46:23

**grant** 43:11

**granted** 5:4

**greatly** 41:5

**grounds** 27:5

**guess** 38:18

**guilty** 36:8,16,20 37:2, 16 38:2 41:7

---

**H**

**hand** 9:19 36:19

**harm** 17:1

**harming** 29:5

**health** 29:24 31:3 33:3, 18 34:4 41:21 43:21

**hear** 38:6

**heard** 35:10 44:25

**hearing** 4:20,25 5:2,19, 20,21,22 6:3,5,9,14,22 8:21 27:1 45:24,25 46:8, 11,14,15,16,19 47:5

**held** 5:19 12:20 13:8,11 29:11 46:1

**Honor** 7:1,4 9:4,6,13,17 11:4,10,16,22 16:2 26:12,23 27:9,13 28:19 33:9,25 35:12 38:4,8 39:4,11,13,16,22,25 42:25 43:10 45:6,10 47:8,10

**hope** 8:9

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

**hoping** 43:15

**hospital** 14:1

**housed** 15:13

**hygiene** 30:10,13

**hypothetical** 24:11

---

**I**

**ideas** 16:25 29:11

**identify** 6:21 36:24

**Iliana** 28:9

**illness** 18:23 20:21 34:6

**impact** 30:25

**impair** 41:23

**impaired** 24:15,17 25:6, 12 29:24 31:5,7

**impairment** 19:17 20:5, 14 23:25 32:13 34:16

**impairs** 25:15

**impressed** 41:5

**inability** 30:24 40:7 43:22

**include** 43:13

**included** 29:8

**including** 14:15 33:20 42:17

**incompetency** 44:7

**incompetent** 26:6 41:25 42:12 45:17 46:6, 12,20

**indeterminate** 20:12 32:16

**indicating** 36:23

**indication** 17:24

**indications** 33:16

**individual** 16:1,4 23:4 28:7

**individuals** 19:17

**inflammation** 30:20

**inform** 7:23

**information** 14:8,13 20:16 24:20 29:10

**initial** 4:12,14 12:20 13:8,11 28:20

**inmate** 15:15 17:22

**inmates** 15:13

**insanity** 6:1 42:20

**insight** 29:20,23 30:23 31:3,7

**insisted** 13:24

**insistence** 43:17

**insisting** 16:23

**instance** 44:3

**intent** 6:1 37:23,24 42:20

**interacting** 15:15

**interactions** 30:11

**interest** 38:16

**interested** 44:25 45:12

**interfere** 25:22

**interfered** 24:19

**interpretation** 19:19

**interrupt** 15:22

**intervene** 17:3 29:7

**interview** 27:18

**interviewed** 28:2

**interviewing** 29:8

**interviews** 14:4,7,24,25 18:20 20:17 26:1 28:3

**investigate** 17:3 29:8

**irrational** 36:11 37:15, 25 41:13,17,19

**irritation** 30:20

**issue** 34:2 39:20 44:16 45:14

**issued** 5:13

**issues** 46:24

---

**J**

**Jacksonville** 5:19

**Jimenez** 28:10

**Joshua** 4:4 8:16 12:3

**journalist** 36:14,21 37:17,23 40:20

**judge's** 44:1

**judgment** 29:25

**jury** 46:23

**justice** 46:5,10

---

**K**

**Kevin** 4:6

**knowledge** 22:17 38:14

---

**L**

**L-i-s-a** 10:7

**labeled** 32:3

**law** 41:3

**lawyer** 32:2 41:17

**layman's** 33:5

**lead** 5:14

**leave** 32:23

**led** 31:13

**left** 18:7 47:1

**legal** 22:11,13,23 23:2 24:5,14 25:4,16 26:7 29:24 31:5,7,25 32:1 34:17 35:15,21 38:9,25 40:5,8,9,11,13 41:24 42:5

**lesions** 30:17

**light** 42:3,6

**limits** 13:2,16,22

**Lisa** 5:14 9:14,24 10:4

**locate** 6:19

**located** 8:2,4

**locations** 22:17

**logic** 31:18,20 36:12

**long** 7:25 30:25

---

**M**

**Mac-cat-ca** 23:8 25:1 35:4

**made** 15:2,8 29:4 38:22

**maintain** 28:25 30:7

**maintaining** 15:12

**major** 22:18

**majority** 21:6

**make** 7:12,13,16,19 13:13 19:18 21:16 24:25 39:19 43:2

**making** 18:25

**malingering** 20:4 32:20,21,24,25 33:1,8, 13 42:7

**marked** 26:14

**marshal** 7:24

**matter** 46:23

**matters** 5:8 47:4

**meaning** 20:12

**meaningful** 24:20

**means** 24:18

**meant** 28:18 35:9 39:3 40:3

**meantime** 4:22

**media** 37:2,5 41:8,12

**medical** 13:25 14:19 16:19,23 17:15 28:24 29:13 30:15,16 43:6,18, 20 44:4

**medication** 17:9,16,25 18:4,11,17

**medications** 17:12

**mental** 15:20 16:10,13 18:3,23 20:21 21:6 25:15,21 29:24 31:3 32:17 33:3,18 34:4,6,23 41:21,22 42:8 43:21

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

Index: mentally..public

mentally 42:11

mention 45:23

met 13:19 17:15 25:2

Miami 5:10 6:20 8:2,5 9:16 10:21,23 12:2 17:16 26:20 27:17

middle 10:8 34:14

minutes 8:11,22

mislabelling 31:17

MMPI-2 33:16

MMPI-2RF 19:4 32:9

moment 7:9 15:6

morning 9:3 10:16,17 27:22

motion 5:4 42:23 43:2, 8,12 45:3,13

motive 37:16,17 40:24

motives 36:13,20

move 9:5 14:22 21:24 26:14,24 41:9

moved 4:18 5:3 18:20

Moving 15:17 16:9

multiple 16:21 17:25 27:21

**N**

nature 12:21 42:13

necessarily 37:25

needed 30:9

night 13:10

nine-page 26:10,16

notary 6:19,20 7:13,15, 17,20 8:2,8 9:10 15:24

notary's 7:18

note 17:20 34:3

noted 28:15

notes 18:3

notice 4:23 5:25 42:20

November 5:13 11:3 26:18

numerous 15:10 28:22 29:3 30:8,17

**O**

oath 6:21 7:19 8:8

objection 7:2 11:10,21 26:24 43:8,9

objectively 40:10

observations 15:2,18, 19 16:9,12 20:18 25:20

obvious 41:1

occasion 44:14

occasions 15:10

odor 30:14

offense 14:17,18,21 31:14,19 43:4 44:9,12, 17 45:20

offenses 32:6

office 8:4,6,7 9:8

Officer 8:14

Olanzapine 18:8,9,10

open 32:23

opined 5:15

opinion 26:2,5 36:11 37:8 38:10,17 43:14

opportunities 30:8

opportunity 45:2

options 6:23

order 5:4 19:9 20:4 21:18,23 23:14 36:24 43:12,24 45:17,18

ordered 43:16,19

overwhelm 40:15

**P**

p.m. 47:15

paragraph 29:20 31:2 33:10,11 34:13,14

paranoid 16:25

part 11:25 12:13 13:2 14:13 17:9 18:19,21 22:1 23:7,21,23 24:2,7, 8,11 26:8 33:10,14,19, 25

participants 22:18,19

parties 45:1

party 44:25 45:1,12

past 37:6 44:14

Paul 4:7

penalty 22:21

people 17:1,2 29:5

perception 28:16

perceptions 21:10

performance 35:3,11

period 14:3 21:7 25:21 26:9 34:2

perseverate 16:22

phone 7:2,6

picking 30:18

pill 17:22

point 5:12 18:19 28:14 42:1

points 30:21

poor 17:24 30:1,6,12,23 38:19

population 15:16

portion 24:5 25:3 34:18 35:3 44:10

portions 25:1

portray 36:22,23

position 10:22 28:11,13 37:21

possibility 32:23,24 33:1

possibly 33:17 34:4

preliminary 45:24,25 46:7,10,14,15 47:5

preparation 46:13

prescribed 18:5,8,12, 16

present 4:8 8:19 9:16 42:12 46:23

presentation 8:25

presented 15:10

previously 6:4

Prisons 11:2 44:1,2

problem 8:22 43:21

Procedurally 9:7

proceed 5:7,16 7:5 8:24 9:3 10:13 11:23 26:6 42:1 46:12,20

proceeding 7:2 26:7

proceedings 23:17 24:14 25:16 34:22 41:24 42:14 47:14

process 12:13,19 13:2 14:14 15:3,21 17:10,14 18:19 21:23 23:2,8,16, 19 24:14 26:1 38:20 43:13

processes 23:23

produced 9:24

prominent 31:8

pronouncing 26:20

properly 42:15

provide 23:14 24:20 28:17 29:10 38:10 40:22

provided 14:19 44:12, 15

psychiatric 19:15 20:5, 14

psychiatrist 17:21,23

psychologic 34:16

psychological 19:9 32:8,13

psychologist 10:24 11:1,19

psychology 28:12

psychosis 18:12

psychotic 21:1

public 4:15,16,23 15:24

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

Index: purpose..solemnly

**purpose** 12:21 19:1,6 20:2 22:7 23:11

**purposes** 12:17 40:25

**pursuant** 11:5 42:25

_____

**Q**

**qualified** 4:14

**question** 16:7 33:10 36:5

**questioned** 31:13

**questions** 24:13 27:10, 12,15 28:15 34:11,12 35:7,13,16,25 37:13 39:7,10

**quickly** 8:3

**quote** 35:1 38:22

_____

**R**

**R.C.** 26:19

**raise** 9:18

**range** 20:10 24:15,17 34:16

**ranging** 21:12

**rational** 24:21,22 25:16 34:21 41:19,23

**reaction** 13:5 38:6

**read** 43:23

**reading** 32:20,22

**ready** 8:24 9:5

**reality** 21:10 28:17 43:22

**reasoned** 37:1

**reasoning** 24:9,10 35:23

**reasons** 21:5 41:4

**receive** 27:2

**received** 11:12,13 21:8 27:7 37:4

**receiving** 5:17

**recess** 7:9 8:9,12,13

47:12

**recommendations** 44:1

**record** 6:22

**records** 14:19 21:8,11 26:2 33:21

**reference** 12:7

**referred** 22:2 23:8 31:3

**reflective** 32:12 43:21

**refused** 15:11

**refusing** 30:6

**regard** 7:22 42:24 45:19,24

**regimen** 17:17

**relate** 35:14

**related** 14:8 44:16 46:25

**relations** 30:1

**relieved** 4:24

**rely** 6:1 42:20

**remain** 17:5 44:21 45:15 47:2

**remained** 18:3

**remembered** 43:23

**repeat** 13:17 16:7,22

**report** 5:13,17 12:8 18:1,6 26:10,17,24 27:3 29:15 30:4 32:8,11,21 34:10 38:16 44:19,20,21

**reported** 17:21 18:14 28:2

**reporting** 19:14 32:13

**represent** 4:17

**representing** 4:24

**represents** 4:6,7 8:20

**request** 38:16

**requires** 46:5,10

**respect** 32:19 44:18 46:17,20,24 47:5

**respond** 44:24

**response** 19:18 45:12, 13

**responses** 19:13 32:12 35:22 36:10 39:6

**responsibilities** 12:1

**responsibility** 38:10

**restoration** 42:18

**resulted** 14:17 15:7

**results** 19:11 20:6,8,9, 15 22:24 28:3 32:9 33:20

**review** 14:7,25 18:2 21:7,8 26:2 33:21

**reviewed** 14:13,15 20:17

**rise** 8:14 47:13

**role** 40:12

**roles** 22:18

**room** 15:12,23

**route** 9:8

**rule** 21:18 46:2

**run** 30:25

**Ryne** 4:4 8:16 12:3

_____

**S**

**safety** 29:6

**sane** 44:8,17

**sanity** 43:3 44:11 45:19

**scheduled** 4:25

**schizophrenia** 21:1, 12,16,19,22

**score** 23:3,23 24:5,15 34:15,18

**scored** 24:16

**scores** 25:12

**seal** 27:1 45:3

**sealed** 27:4 44:20,22 45:15

**sealing** 44:18

**section** 32:8 35:13 43:1

**sections** 25:2

**Security** 8:14

**sensation** 37:3

**sentence** 31:2

**September** 4:10,13,21 5:1,5,10,13 12:11 27:19 42:22

**serving** 30:19

**set** 5:21

**setting** 5:21

**severe** 32:13

**severely** 25:15 41:23

**shed** 42:3,6

**Shorstein** 4:7,22 5:1,25 6:4,24 7:1 8:18 11:5,9, 17,20,21 26:22,23 27:11,12 39:12,13,23,24 42:21 43:7,9 44:19 45:5, 6 47:9,10

**short** 8:13

**shortly** 45:17

**show** 33:17

**shower** 15:11 30:7

**showing** 46:4

**shown** 40:10

**shows** 38:18 40:8

**sign** 40:8

**signed** 26:19

**significant** 21:9 34:5

**signs** 33:17

**similar** 23:25 32:6 36:9

**SIRS-2** 19:21 20:2,3 32:16

**situation** 17:4 22:23 24:5,10 25:4 34:17 35:15 38:1 39:1 40:5,8, 13 42:5

**smoothly** 6:16

**solely** 19:1

**solemnly** 9:20

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

**someone's** 22:16

**sources** 14:8

**spanned** 27:22

**specific** 24:12 28:17

**specifically** 5:24 41:21

**spectrum** 21:1,22

**Speedy** 46:21,24,25
47:6

**spell** 10:5

**spite** 30:11

**staff** 17:3,15 29:7,13
30:13,16

**stand** 7:24 23:4 26:4
42:12

**standard** 25:2,9

**standing** 7:23

**start** 10:25 12:18 27:15

**started** 8:10 15:5

**starts** 29:20

**state** 10:2 18:3 21:6
25:21

**stated** 32:15

**statements** 15:8

**States** 4:4,7 7:6 8:16,20
9:5,14 39:21 43:1,2 47:7

**status** 5:19,23 15:20
16:10,13 29:24 31:5,7
33:3

**stay** 27:16

**stop** 30:18,22

**student** 28:13

**submitted** 14:17

**suffer** 34:6

**suffering** 20:21

**suffers** 21:19

**sufficient** 42:4

**suggested** 19:14 21:9
35:22

**suggests** 34:19

**suicide** 13:8,10,12 15:7

**summarize** 33:4

**supposed** 45:25

**suspended** 47:2

**suspicious** 16:25 17:6

**swear** 9:20

**sworn** 9:25

**symptoms** 18:1,11,15
19:15 25:15 33:18 34:5,
23 41:22

**system** 22:11,13 24:19
31:25 32:1 35:2,10,21
38:24 39:2,5,8 40:9,11

**T**

**takes** 47:11

**taking** 33:19

**talk** 19:2 23:6

**telephone** 6:23 7:11

**temporary** 28:13

**tender** 11:6,17

**terms** 22:10 24:3,11
25:11 28:20 30:3,16
31:22 33:5,8 38:7 40:16

**terrorism** 37:6

**terrorist** 31:17 32:4
36:4,24 37:22 41:16

**terrorists** 36:25

**test** 19:4,6,8,11,14,20,
24 20:2,6,8 21:24 22:5,
7,9,15,21,24 23:1,7,9,
11,13,17,22,24 24:1,2,6,
8,12 25:7,8,11 32:8,9
34:18 35:4,6,13,17 36:6

**testimony** 9:20

**tests** 14:3,6 18:21,24
19:3 20:16 26:1 28:5
31:11 39:7

**thing** 6:17

**things** 6:8

**thinking** 8:3

**thinks** 36:3

**thought** 16:24 21:20,23
38:19

**time** 5:11,23 6:12 7:14
11:4,15 15:4 18:6,7,19
21:15,17 26:5,13,25
27:9 29:6,9 42:12 43:4,
16 44:8,11,17 45:19
46:2,16

**timeframe** 20:19

**times** 16:22 17:25 27:16
28:22 29:3 30:18

**today** 5:23 45:4,22

**told** 13:15 16:18,21
40:17

**top** 29:19

**transported** 5:18

**treat** 18:11,14 41:18

**treat-** 17:18

**treated** 23:18 24:13
32:4 34:20 35:20 41:15
42:7 44:6

**treatment** 33:22 42:17

**trial** 5:7 23:4 26:4 37:21
41:12 42:12 46:21,24,25
47:6

**trouble** 37:7

**truth** 9:21,22

**turn** 6:24

**Turning** 32:7

**type** 17:9 21:20 22:20,
22 25:8 30:7 31:20
33:12

**types** 14:3 21:11

**typical** 15:15

**typically** 13:11 19:16

**U**

**U.S.** 8:3,6

**unable** 19:18 38:24
42:13

**uncertainty** 21:14

**unclassified** 20:25

**undergo** 42:17

**understand** 8:23 13:15,
20,23 25:1 40:2 42:13
43:22

**understanding** 22:11,
12 23:2,16,22 24:21,23
25:16 34:21 41:24

**understands** 40:11,12

**unit** 15:13,16 17:24
29:5,14 30:11

**United** 4:3,6 7:6 8:16,20
9:4,13 39:21 43:1,2 47:7

**unkempt** 15:10

**unrelated** 14:21

**unspecified** 21:22

**unstable** 18:3

**unusual** 6:15 43:25

**V**

**vaguely** 29:11

**venue** 41:10

**verbalizations** 16:16

**verbalized** 30:22 32:2
37:4

**Verbalizing** 16:18

**verification** 38:15

**verify** 7:17

**versus** 4:4 8:16

**video** 6:6,7,10,14 8:23,
25

**view** 31:6 32:19 41:6
42:3

**vigilant** 17:6

**vitae** 11:7

**W**

**walked** 15:23

**wanted** 34:11 40:19,21

UNITED STATES OF AMERICA vs. JOSHUA RYNE GOLDBERG
Hearing, Competency on 12/14/2015

**warden**  26:19

**warnings**  30:9,12

**watch**  13:8,10,12 15:7

**word**  32:16

**words**  31:4 35:7 37:19

**work**  6:16 37:18 38:13
 40:21

**working**  6:11 10:25
 16:1 38:17

**worthless**  7:20

**write**  34:15

**written**  45:16

—————————————

**Y**

—————————————

**year**  7:16

**years**  6:13